UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VENITA MARIA LOUISE BOND,      Case No. 1:13-cv-101

    Plaintiff,      Spiegel J.
                                       Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Venita Bond filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REMANDED, because it is not supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On March 19, 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of August 15, 2008, due to physical and mental impairments.  (Tr. 144-53, 180).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ").  On August 9, 2011, ALJ John Pope held an evidentiary hearing at which Plaintiff appeared with counsel.  The ALJ heard testimony from Plaintiff, her daughter, and an impartial vocational expert. (Tr. 33-79).

1

On October 28, 2011, ALJ Pope denied Plaintiff's applications in a written decision. (Tr. 16-27). Plaintiff now seeks judicial review of the denial of her applications for benefits.

Plaintiff was 41 years old at the time of the administrative hearing and when ALJ Pope issued his decision. (Tr. 13, 33, 144). She earned a GED, and her past relevant work included automobile self-service attendant, security guard, fast-food worker, and industrial cleaner jobs. (Tr. 75, 186). Plaintiff alleges disability based upon anxiety, panic attacks, mood swings, depression, and problems with her knees. She is currently prescribed Lexapro, Wellbutrin and Seroquel. Plaintiff testified that on a good day, she has three to five panic attacks, lasting between two minutes and 30 minutes. (Tr. 53). Plaintiff further asserts that she is unable to work because her mind travels too fast and she cannot keep focused on a task at hand.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, panic disorder without agoraphobia." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional limitations with the following nonexertional limitations:

> She can perform unskilled work without strict time or production requirements involving only occasional contact with coworkers, supervisors, and the public.

(Tr. 20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as an industrial

cleaner, as well as other jobs in the national economy, including stock clerk, mail room clerk and housekeeper. (Tr. 26-27). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence; 2) improperly evaluating Plaintiff's credibility; and 3) finding that Plaintiff could perform her past relevant work as an industrial cleaner. Upon careful review, the undersigned finds Plaintiff's first assignment of error to be well-taken and dispositive.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Evaluation of the Opinion Evidence is not supported by Substantial Evidence**

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because it is based upon an improper evaluation of the opinion evidence. Plaintiff contends that the reasons given by the ALJ in discounting the opinions of her treating psychiatrist, Tarakad Natarajan, M.D. were not "good reasons" mandated by agency regulations and controlling law. Plaintiff further asserts that the ALJ failed to provide sufficient rationale for the assigned significant weight to the opinions of the state agency physicians. The undersigned agrees that the ALJ's evaluation of the opinion evidence is not substantially supported.

Here, with respect to Plaintiff's mental impairments[1], the record indicates that Plaintiff has a history of suicide attempts and has been treated for depression and anxiety since 1998. The record contains treatment notes from Clermont Counseling Center from September 2007 through October 2009, where Plaintiff received therapy services and treated with psychiatrist Tarakad Natarajan, M.D. (Tr. 335, 363, 468-492). In September 2007, Plaintiff was diagnosed with Bipolar II disorder, most recent episode depressed with psychotic features, cannabis dependence, current features, and

5

history of polysubstance abuse. Treatment notes from Clermont Counseling indicate that Plaintiff often displayed an anxious and depressed mood.  She was also prescribed Paxil, Klonopin, and Lexapro.

In May 2009, Dr. Natarajan, completed a mental status questionnaire wherein he indicated that Plaintiff has problems with concentration due to anxiety and has "much difficulty in staying continuously focused…." (Tr. 430).  He further noted that simple, routine and/or repetitive work is not a problem for her as long as she is working alone. *Id.*

In July 2009, Plaintiff appeared for a psychological consultative examination with Dale Seifert, M.D. at the request of the state agency.   Upon examination, Dr. Seifert diagnosed Plaintiff with panic disorder and anxiety/panic disorder.  Dr. Seifert determined that Plaintiff had moderate limitations in her ability to relate to others, including fellow workers and supervisors, a mild limitations in her ability to understand and follow instructions, a mild limitation in her ability to maintain attention to perform simple/repetitive tasks, and a moderate limitation in her ability to withstand the stress and pressures associated with day-to-day activity.

In November 2009, Dr. Natarajan completed another Mental Status Questionnaire wherein he again opined that Ms. Bond had problems with concentration and focus, had poor insight, and fair judgment. (Tr. 494-96).  Dr. Natarajan also noted Ms. Bond's reports that she had problems with focus and concentration and following directions when anxious and angry.  (Tr. 495).  He listed Plaintiff's current prescribed

---

[1] Plaintiff's statement of errors focuses solely the ALJ's evaluation of her mental impairments.

6

medications as Lithium, Wellbutrin and Klonopin. He noted prior ineffective medication included: Paxil, Zyprexa, Zoloft and Effexor.  (Tr. 495).

In formulating Plaintiff's mental RFC, the ALJ gave "no weight" to Dr. Natarajan's May 2009 assessment because "the signatures are illegible and it is not clear who provided the opinions and what the treating relationship was to the claimant. Furthermore, the first opinion is based on the claimant's subjective reports of symptoms."  (Tr. 23).  The ALJ gave "little weight" to Dr. Natarjan's November 2009 Assessment "because it does not offer any specific restrictions or functional limitations, it is based on the claimant's subjective reports, rather than the examiner's own findings, and it is inconsistent with the overall evidence of record." (Tr.  23).

The ALJ assigned "some weight" to the findings of Dr. Seifert, the state agency psychologist, "as it is consistent with the overall evidence in the record."  (Tr. 24).  The ALJ's summarized his RFC findings as follows:

> As for the opinion evidence, the above assessed residual functional capacity is consistent with the findings of the state agency, which found that claimant had no severe physical impairment, but did find restrictions based in the claimants mental capacity.  (Exhibit 9F, 10F, 11F). The evidence received after the agency rendered its opinion does not show any significant decline in the claimant's condition.  Consequently, it remains consistent with the record as a whole.  As previously discussed above, the undersigned has afforded little weight to the treating physician's opinions and great weight to the findings of the consultative examiners because they are consistent with the overall evidence.

(Tr. 25).

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with

7

the other substantial evidence in [the] case record.'"  *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician*.  Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).  The ALJ's decision does not include a sufficient analysis of such factors and also fails to properly articulate the basis of his evaluation of the opinion evidence thereby preventing the court from providing meaningful review of his decision.

As noted above, the ALJ rejected the findings of Dr. Natarajan because they were "based on the claimants subjective reports, rather than the examiner's own objective findings" and was "inconsistent with the overall evidence in the record."  The ALJ also discounted Dr. Natarajan's findings because he "failed to mention Plaintiff's marijuana use and what affect her cannabis dependence had on her condition and symptoms." (Tr. 23).  These reasons, at least in part, are not substantially supported.

8

At the outset, the Court notes that the ALJ improperly assigned "no weight" to Dr. Natarajan's May 2009 assessment because "the signatures are illegible and it is not clear who provided the opinions and what the treating relationship was to the claimant. Notably, while the plaintiff bears the burden of establishing disability, the ALJ also has a duty to fully develop the record. *Sims v. Apfel*, 530 U.S. 103, 110–111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits); *see also, Miller v. Heckler*, 756 F.2d 679 680–81 (8th Cir.1985) (illegibility of important evidentiary material can warrant a remand for clarification and supplementation.); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him). Here, with minimal investigation, the ALJ could have easily determined that this assessment was authored by Dr. Natarajan, as the handwriting and signatures were identical to those of his subsequent assessments.

Next, contrary to the ALJ findings, the fact that Dr. Natarajan's opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen*, 817 F.2d 865 (D.C.Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be

9

> rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989).

In *Blankenship*, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship*, 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Starks could rely upon the subjective complaints elicited during his evaluation of Plaintiff in formulating Plaintiff's functional restrictions. *See Warford v. Astrue*, No. 09–52, WL 3190756, at *6 (E.D.Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments). As such, to the extent the ALJ rejected Dr. Natarajan's opinions because he relied upon Plaintiff's subjective complaints; such a finding is not substantially supported. Furthermore, the ALJ improperly determined that Dr. Natarajan's assessments were not based upon his own objective findings. Notably, the ALJ appears to ignore the treatment notes from Clermont Counseling (where Plaintiff underwent therapy and treated with Dr. Natarajan) which includes objective findings[2] relating to Plaintiff's mental impairments. These include clinical findings such as depressed mood, anxious mood and manic episodes. (Tr.335-394, 488, 557-595).

---

[2] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). See 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically

In addition, the intake assessment and therapy notes from Clermont Counseling explicitly note Plaintiff's previous cocaine use and current use of marijuana. (Tr. 358-360, 484, 485, 487, 490). Thus, while Dr. Natarajan's assessments did not mention Plaintiff's drug use, it is apparent that he was aware of such by his treatment notes. Moreover, there is no indication from the record that Plaintiff's marijuana use, in fact, affects her depression and anxiety. Thus, to the extent the ALJ determined that Plaintiff's alleged marijuana use affected his mental impairments, such a determination was erroneous.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.,* No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel,* 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.,* 892 F.Supp. 183, 187–88 (E.D.Mich.1995)). *See also Rosa v. Callahan,* 168

---

described and evaluated." 20 C.F.R. § 404.1528(b).

F.3d 72, 78–79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Last, the ALJ's sparse rationale relating to his decision to afford "great weight" to the state agency psychologists' findings prevents the Court from engaging in meaningful review of his decision in this regard. Specifically, the ALJ only identified the state agency's psychologists by exhibit number and did not discuss their specific findings anywhere in his decision. (Tr. 25). Furthermore, the ALJ's summary of his evaluation of the opinion evidence states that "the undersigned has afforded little weight to the treating physician's opinions and great weight to the findings of the **consultative examiners** because they are consistent with the overall evidence. (Tr. 25) (emphasis added). However, as detailed above, the ALJ also stated that was giving only "some weight" to the Dr. Seiftert, the consultative psychologist. (Tr. 24).

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also*

*Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). Here, the ALJ's evaluation of the opinion evidence does not build an accurate and logical bridge between the evidence and his conclusion.

In sum, the reasons given by the ALJ in rejecting Plaintiff's treating psychiatrist's findings were not supported by the record and therefore do not qualify as "good reasons" as required under the regulations. See *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record). As found by the Sixth Circuit in *Wilson*, even where the decision of the Commissioner is supported by substantial evidence, reversal is required where the agency fails to follow its own procedural regulations and where the regulation was intended to protect applicants. *Id.* Furthermore, the ALJ's sparse analysis relating to the findings of the state agency psychologists prevents the Court from engaging in meaningful review of the ALJ's decision in this regard. See *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Accordingly, the undersigned concludes that this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law. Because this matter

13

must be remanded to reconsider the opinion evidence, the ALJ should be mindful of Plaintiff's additional alleged errors (see supra, page 3) which may also require reconsideration in light of any new findings on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.  All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date*. Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation.  As no further matters remain pending for the Court's review, this case be **CLOSED**.

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

VENITA MARIA LOUISE BOND,

    Plaintiff,

  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-101

Spiegel J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15